NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
_____

No. 11-1506
_____

NATIONAL LABOR RELATIONS BOARD,
Petitioner

v.

GROSS SCHOOL BUS SERVICE, INC.,
Respondent

_____

No. 11-1653
_____

GROSS SCHOOL BUS SERVICE, INC.,
Petitioner

v.

NATIONAL LABOR RELATIONS BOARD,
Respondent

_____

On Petition for Review and Application for Enforcement
of a Decision and Order of the National Labor Relations Board
(NLRB-1: 4-CA-37768)


_____

Submitted Under Third Circuit LAR 34.1(a)
October 24, 2011

Before: SLOVITER, GREENAWAY, JR., Circuit Judges
and POLLAK,* District Judge


_____

* Hon. Louis H. Pollak, Senior Judge, United States District Court for the Eastern
District of Pennsylvania, sitting by designation.

———

OPINION

———

SLOVITER, *Circuit Judge*.

Before us is the Petition of the National Labor Relations Board ("the Board") seeking to enforce its Decision and Order finding that Gross School Bus Service, Inc. ("the Company") violated Section 8(a)(5) and (1) of the National Labor Relations Act, as amended ("the Act"), 29 U.S.C. §§ 151, 158(a)(5) and (1), by refusing to bargain with the International Brotherhood of Teamsters, Local 384 ("the Union"). The Company filed a cross-petition for review.

The Union is the certified collective bargaining representative of "[a]ll full-time and regular part-time bus drivers and bus aides employed by [the Company] at its 1801 Pottstown Pike, Pottstown, Pennsylvania facility…." App. at 7. The Company is a Pennsylvania corporation that provides student transportation services. It admits its refusal to bargain but claims that it has no duty to do so because the Board erred by overruling the Company's election objections and certifying the Union.

For the reasons that follow, we will deny the petition for review and enforce the order of the Board.[1]

---

[1] The Board had subject matter jurisdiction to issue the Decision and Order under Section 10(a) of the Act. 29 U.S.C. § 160(a). This court has jurisdiction under Section 10(e) and (f) of the Act. The Board's Decision and Order is based, in part, on findings

# I.

At the representation election, the Union received sixty-five votes, Team United Front (another union) received fifty-two votes, and two votes were cast against representation by either union.

Shortly thereafter, the Company filed the following six objections identifying conduct that it claimed materially affected the results of the election:

1. [The Union] and its agents and/or third parties repeatedly engaged in electioneering at or near the polling place on election day and during periods when the polls were open.

2. [The Union] and its agents and/or third parties engaged in campaign speech within the period commencing twenty four hours before the opening of the polls.

3. [The Union] and its agents and/or third parties published statements that told voting employees that [the Company] committed numerous unlawful acts, including but not limited to creating Team United Front, and by such conduct [the Union] and its agents and/or third parties created an atmosphere of confusion and coercion and interfered with the employees' rights.

4. [The] Board agent failed to monitor and prevent improper conduct by [the Union] and its agents and/or third parties in the voting area.

5. [The Union] and its agents and/or third parties promised to waive dues payments by employees who agreed to join [the Union] before the election, while not offering a waiver of dues to employees who join [the Union] after the election.

6. By the above and other conduct, [the Union] and its agents and/or third parties, and by the above and other conduct, [the] Board Agent, interfered

---

made in an underlying representation proceeding in which the Company contested the Board's certification of the Union as the employees' exclusive bargaining representative. Accordingly, the record in that proceeding is also before this court. 29 U.S.C. § 159(d).

3

with, coerced, and restrained employees in the exercise of their Section 7 rights and interfered with their ability to exercise a free and reasoned choice in the election.

App. at 459-60. During the hearing on the objections, the Company withdrew Objection 3 and conceded that Objection 6 reiterated other objections.

The hearing officer's report recommended that Objections 1, 2, 4, 5, and 6 be overruled, that Objection 3 be considered withdrawn, and that the Union be certified. Specifically as to Objections 1, 2, and 6, the hearing officer held that (1) members of the in-house organizing committee ("IHOC") were not agents of the Union, (2) the Company had not demonstrated that IHOC members had engaged in any objectionable conduct either away from or in the voting line, and (3) the Company failed to prove that the conduct that occurred could be reasonably construed to have affected the employees in the voting line so as to have had a reasonable tendency to materially affect the outcome of the election.

The Company timely filed exceptions to the report and recommendation. A three-member panel of the Board issued a Decision and Certification of Representative, noting that the Employer had not filed exceptions to the hearing officer's recommendation to overrule Objections 4 and 5. Ultimately, the Board adopted the hearing officer's findings and recommendations and the Union was certified as the employees' exclusive collective bargaining representative.

In response to the Union's request that the Company recognize and bargain with it, the Company advised the Union by letter that it refused to do so. The Union filed an

unfair labor practice charge, and the Acting General Counsel then issued a complaint alleging that the Company's refusal to bargain violated Section 8(a)(5) and (1) of the Act. The Company admitted its refusal to bargain, but claimed it had no duty to do so because the Board had erred in overruling the Company's election objections in the representation case. A three-member panel of the Board granted the Acting General Counsel's motion for summary judgment.

## II.

### Standard of Review

On appeal, "[t]he findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." 29 U.S.C. § 160(e). In particular, this court will not reverse credibility determinations "unless inherently incredible or patently unreasonable." *St. George Warehouse, Inc. v. NLRB*, 420 F.3d 294, 298 (3d Cir. 2005). Even if a court reviewing a Board decision "would justifiably have made a different choice had the matter been before it de novo," it may not "displace the Board's choice between two fairly conflicting views…." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).

The determinative issue is whether the Board's decision to overrule the Company's objections during the underlying representation proceeding was proper, thus giving the Company the duty to bargain with the Union.[2] The Company first claims that

---

[2] The Company failed to preserve Objections 3, 4, and 5 because it abandoned Objection 3 at the objections hearing and did not pursue Objections 4 and 5 before the

5

the Board erred by concluding that IHOC members were not agents of the Union. Specifically, the Company argues that IHOC members were acting as Union agents when they gathered as a group near the voting area and engaged in conversations in the voting line, in violation of the rule from *Milchem, Inc.*, 170 N.L.R.B. 362 (1968) ("[C]onversations between a party and voters while the latter are in a polling area awaiting to vote will normally, upon the filing of proper objections, be deemed prejudicial without investigation into the content of the remarks.").

The Union will be held accountable for the acts of IHOC members when (1) the IHOC as a whole "possess[ed] actual or apparent authority to act on behalf of the union in assisting the union in the organizational drive or election campaign," (2) the individual member of the IHOC whose conduct is at issue was "sufficiently active in the IHOC that he or she had actual or apparent authority to act on behalf of the IHOC," (3) "[t]he acts of the IHOC member…[fell] within the scope of his or her role as a member of the IHOC," and (4) the Union did not take "adequate steps to repudiate acts which, although unauthorized, [fell] within the apparent authority of IHOC members." *NLRB v. L & J Equipment Co., Inc.*, 745 F.2d 224, 234 (3d Cir. 1984).

---

Board. "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. §160(e). The Company has not argued that extraordinary circumstances prevented these objections from being raised before the Board.

The Board affirmed the hearing officer's conclusion that IHOC members were not agents of the Union, except as to IHOC member Linda Garner.[3] The Board assumed that Garner was an agent of the Union at the time that she made a single comment about the election while standing in line to vote.

The Board also upheld the hearing officer's conclusion that the IHOC members' conduct in the voting line was not objectionable, including Garner's comment about the election. The Board recognized that the hearing officer had applied the incorrect standard for evaluating claims of objectionable electioneering by nonparties. The Board then applied the correct standard, which is "whether the conduct at issue so substantially impaired the employees' exercise of free choice as to require that the election be set aside," and still found no objectionable conduct. App. at 22 (citing *Tyson Fresh Meats, Inc.*, 343 N.L.R.B. 1335, 1335 n.4 (2004)). The Board evaluated Garner's comment under the *Milchem* standard and determined that it was insufficient to void the election. Finally, the Board found the IHOC members' gathering away from the polls was unobjectionable even assuming the agency status of the IHOC members because they were not engaged in electioneering.

Each of these decisions was supported by substantial evidence. The conclusion that the IHOC members were not Union agents while in line to vote because their actions did not fall within the scope of their roles as IHOC members was manifestly supported by

---

[3] The hearing officer's report did not cite to *L & J Equipment* and instead relied only on Board precedent to conclude that the IHOC members were not agents of the Union. The Board, however, explicitly considered the standard from *L & J Equipment*.

substantial evidence because, *inter alia*, IHOC members testified that the Union representative never gave them instructions about how to behave or what to say while in line to vote, and the topics of conversation were mostly unrelated to the election. As to the single comment related to the election that was made by an IHOC member while in the voting line, the evidence supports the conclusion that Garner's comment did not violate the *Milchem* rule even if she was then a Union agent. Garner was speaking to two co-workers, one of whom referred to Garner as a "friend" and explained that Garner was "voicing her opinion as to how she thought and knew the election would go," which was "normal" because "her opinion as to the election was clear from the beginning…." App. at 303-05. Clearly, this single comment fits within *Milchem*'s recognition that a "chance, isolated, innocuous comment or inquiry" will not necessarily void the election even if it was made by a party or party's agent. 170 N.L.R.B. at 363.

Additionally, the finding that the IHOC members' behavior in the voting line was unobjectionable was also supported by substantial evidence. Perhaps most notably, no one complained about the IHOC members' behavior in line to the Board agent conducting the election. The hearing officer also specifically discredited the witness who stated that IHOC members made pro-Union comments while standing in line.[4] That credibility determination was not "inherently incredible or patently unreasonable," and will not be disturbed. *St. George Warehouse*, 420 F.3d at 298. The conclusion that the

---

[4] The hearing officer found that Adelaide Sabol's testimony was "inherently not believable" and contradicted other testimony. App. at 44.

8

IHOC members' behavior in line did not "substantially impair[] the employees' exercise of free choice as to require that the election be set aside," *Tyson Fresh Meats*, 343 N.L.R.B. at 1335 n.4, was supported by substantial evidence and will be affirmed.

Finally, the finding that the gathering of IHOC members was unobjectionable because they were not engaged in electioneering was supported by substantial evidence. Again, no one complained about the gathering of people to the Board agent conducting the election. Moreover, the group immediately dispersed when the supervisor for the school bus lot asked them to leave. This court will not disturb the hearing officer's credibility determination as to the two witnesses who testified that people standing in the group made pro-Union comments[5] because it was not "inherently incredible or patently unreasonable." *St. George Warehouse*, 420 F.3d at 298. Therefore, this finding will be affirmed.

For the foregoing reasons, we will deny the cross-petition for review and enforce the order of the Board.

---

[5] The hearing officer discredited the testimony of Donna Kurtas and Stephanie Bechtel, and also noted that "[e]ven the testimony of Bechtel and Kurtas does not describe electioneering in the sense that anyone spoke directly to a voter or prospective voter." App. at 43.